UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* JAMES PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:11CV000902 AGF |
| | ) | |
| SANBORN MAP COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This *qui tam* matter is before the Court on Relator James Peterson's motion for a share of the settlement proceeds, pursuant to 31 U.S.C. § 3730(d)(1). On May 19, 2011, Relator filed this action under the False Claims Act ("FCA") against Defendant Sanborn Map Company, Inc. After the Government intervened, a settlement in the amount of $2.1 million was reached approximately two years later. The Government moved to enforce the settlement, and on February 4, 2014, this Court did so.

On February 25, 2014, Relator filed this motion pursuant to § 3730(d)(1), which states, in relevant part, that a relator shall "receive at least 15 percent but not more than 25 percent of the proceeds of the [*qui tam*] action or settlement of the claim, depending upon the extent to which the [relator] substantially contributed to the prosecution of the action." In his motion, Relator seeks a 25% share. In response, the Government requests that Relator's share be limited to 15%. For the reasons set forth below, Relator's motion for a share of the settlement will be granted to the extent that Relator shall receive a 19%

share of the settlement proceeds.

## BACKGROUND

Relator is a former vice president and assistant general manager of Defendant. Defendant contracted with the United States Army Corps of Engineers to perform photogrammetric mapping and aerial photography services for federal, state, and local agencies. During Relator's employment, he learned of Defendant's alleged practices of using unapproved overseas subcontractors and mischarging time to government projects. In 2008, Relator allegedly spoke with his direct supervisor and Defendant's director of human resources regarding the violations. On March 18, 2009, Relator reported Defendant's actions to representatives at the Illinois Department of Transportation. Relator then allegedly discussed the violations with Defendant's CEO. On April 6, 2009, Relator was terminated. After meeting with the Office of the Inspector General in 2010 and the United States Attorney's Office in 2011, Relator filed the complaint in this action under seal on May 19, 2011, alleging violations of the FCA.

In September 2011, Relator met with counsel for the Department of Justice ("DOJ"). The Government intervened in this action on July 31, 2013, and the seal was lifted on the same day. Following an investigation into the fraud, the Government reached a $2.1 million settlement with Defendant. Relator did not object to the settlement amount, but he did object to the overall settlement on the ground that he never agreed to a release provision between him and Defendant in the settlement agreement. After an evidentiary hearing, this Court rejected Relator's position and enforced the settlement agreement.

In support of his contention that he is entitled to a 25% share of the settlement proceeds, Relator argues that he substantially contributed to the Government's recovery. More specifically, in a sworn declaration (Doc. No. 69.), Relator attests to the following: he identified the fraud which, to his understanding, the Government was not yet aware of; spent hundreds of hours reviewing and analyzing emails, contracts, task orders, invoices, payment schedules, and internal documents to assess the extent of the fraud; provided the Government with thousands of pages of documents and a 60-page summary of Defendant's fraudulent scheme; met with the Government to discuss and develop the case by explaining the information he provided and lending his technical knowledge; provided further assistance as the investigation went on including compiling a document directory organizing the several thousands of documents produced in the initial disclosures; reviewed the Government's damage analysis and provided feedback and names of witnesses who could provide additional information; supported the Government during settlement negotiations; and identified 100% of the projects through which recovery for the fraud was obtained.

Relator further attests that he never "oppose[d], impede[d] or unreasonably delay[ed] the Government's efforts in this matter. [He] was candid, honest, and helpful during the interviews with the Government and other agencies." He attests that he followed the natural chain of command while reporting the fraud, that he pursued this action at considerable personal and professional expense, and that the lawsuit and subsequent investigation caused Defendant to implement procedures and policies to prevent future instances of fraud.

Relator's attorney has submitted a sworn declaration essentially verifying the facts provided by Relator in regards to Relator's involvement in the action from July 14, 2010, the date counsel was retained.

In response, the Government contends that Relator is only entitled to a 15% share because he did not substantially contribute to the prosecution of the action and, in fact, made the investigation more difficult while increasing litigation risks through his actions and writings. The Government admits that it had no previous knowledge of the fraud and that Relator provided it with some helpful documents and information, but contends that is the starting point for a 15% award.

The Government argues that a decision not to increase Relator's share above 15% is warranted by the facts that Relator substantially delayed reporting the fraud and filing the complaint; Relator violated the *qui tam* lawsuit's seal by publicizing the case to others; Relator harmed the investigation; the case required a substantial Government effort to develop the facts; Relator inaccurately assessed the subject matter of the false claims and damages; the case settled without the need for discovery, depositions, or trial preparation; and Relator unreasonably opposed the settlement. In fact, the Government claims it made a conscious decision after it received the initial disclosures from Relator not to further involve him due to concerns over how his behavior would affect the proceedings.

The Government provides further rationale for requesting a 15% share including instances of actions or inactions on the part of Relator which negatively affected the investigation and the prospects of successful litigation. The Government contends that its

extensive, costly, and time-consuming investigation established that Defendant used unapproved domestic, as well as foreign, subcontractors, and that Relator's association with that investigation was minimal beyond providing the limited initial group of documents. According to the Government, the use of unapproved domestic, not foreign, subcontractors accounted for the majority of the false claims relevant to the settlement, meaning the documents provided by Relator were not essential to proving Defendant submitted false claims. The Government requests 15% because the minimum of 15% recognizes Relator brought it information that resulted in a settlement but it also reflects that Relator's further involvement was not only minimal but actually harmful. The Government has not submitted any evidence in support of its arguments.

Although Defendant takes no position regarding the share of the settlement proceeds Relator should receive, Defendant claims Relator has made misstatements and omissions of fact that require correction. Specifically, Defendant claims that Relator never raised the issue of unauthorized subcontracting to either the director of human resources or the CEO; that the Government, not Relator, is responsible for Defendant implementing procedural and structural reforms; and that some of the information regarding foreign subcontractors provided by Relator was incorrectly perceived by Relator as being inappropriate.

## **DISCUSSION**

The percentage of proceeds that should be awarded to a relator within the 15%-25% range depends upon "the extent to which the [relator] substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). The statute itself provides no

5

further guidance. "Courts considering the amount of a relator's share of settlement proceeds have looked to various sources for guidance, including a Senate Report related to the 1986 amendments to the FCA, the [DOJ's] . . . internal FCA guidelines, and the case law." *United States ex rel. Rille v. Hewlett-Packard Co.*, 784 F. Supp. 2d 1097, 1100 (E.D. Ark. 2011), *aff'd sub nom. Roberts v. Accenture, LLP*, 707 F.3d 1011 (8th Cir. 2013).

"The Senate Report factors are as follows: (1) the significance of the information provided to the government; (2) the contribution of the person bringing the action to the result obtained; and (3) whether the information that formed the basis for the suit was known to the government." *Id.* In these cases, "the minimum share of 15% is viewed as a finder's fee to which a relator is entitled even when he or she does not substantially contribute to the prosecution of the action." *Roberts*, 707 F.3d at 1016 (citing S. REP. NO. 99-345, at 28 (1986)).

> If the Government comes into the case, the person is guaranteed a minimum of 15% of the total recovery even if that person does nothing more than file the action in federal court. This is in the nature of a "finder's fee" and is provided to develop incentives for people to bring the information forward. The person need do no more than this to secure an entitlement to a minimum 15%.

*Id.* (quoting 132 CONG. REC. H9382-03 (1986)).

> In those cases where the person carefully develops all the facts and supporting documentation necessary to make the case and presents it in a thorough and detailed fashion to the Justice Department as required by law, and where that person continues to play an active and constructive role in the litigation that leads ultimately to a successful recovery to the United States Treasury, the Court should award a percentage substantially above 15% and up to 25%.

*United States ex rel. Rille*, 784 F. Supp. 2d at 1100 (quoting 132 CONG. REC. H9382-03 (1986)). "So, the 15% minimum share is generally viewed as a finder's fee. The maximum share is reserved for those situations in which the relator[] [has] actively and uniquely assisted the government in the prosecution of the case." *Id.* (citations omitted).

"The DOJ guidelines are a list of factors that may be relevant in determining the extent to which [a relator] 'substantially contributed to the prosecution' of [an] action." *Id.* Under the DOJ guidelines, some of the items for consideration for a possible increase in the percentage are:

> (1) The relator reported the fraud promptly; . . . (3) The *qui tam* filing, or the ensuing investigation, caused the offender to halt the fraudulent practices; . . . (6) The relator provided extensive, first-hand details of the fraud to the government; (7) The government had no knowledge of the fraud; (8) The relator provided substantial assistance during the investigation and/or pre-trial phases of the case; . . . (11) The relator and his counsel supported and cooperated with the government during the entire proceeding; (12) The case went to trial; [and] (13) The FCA recovery was relatively small . . . .

*United States ex rel. Johnson v. Universal Health Servs., Inc.*, 889 F. Supp. 2d 791, 796 n.6 (W.D. Va. 2012) (listing the DOJ guidelines).

Some items for consideration for a possible decrease are:

> (3) The relator . . . publicized the case while it was under seal[;] . . . (8) The relator, or relator's counsel, did not provide any help after filing the complaint, hampered the government's efforts in developing the case, or unreasonably opposed the governments' position in litigation; (9) The case required a substantial effort by the government to develop the facts to win the lawsuit; [and] (10) The case settled shortly after the complaint was filed or with little need for discovery . . . .

*Id.* n.7 (listing the DOJ guidelines). It is important to note that "[these factors] are not definitive factors that a court must follow, and they have been subject to criticism."

*United States ex rel. Rille*, 784 F. Supp. 2d at 1100 n.22.

Courts have discussed the importance of the fact that a case settles instead of continuing through the trial process. "The [FCA] does not explicitly reserve a maximum share in the recovery for cases that proceed to trial," therefore "some courts have awarded the maximum share even when the case settled short of trial," while "[o]ther courts have stated that a maximum share should apply only to relators who go through the trial process . . . ." *United States ex rel. Pochardt v. Rapid City Reg'l Hosp.*, 252 F. Supp. 2d 892, 903 (D.S.D. 2003) (citing cases). Although a trial is generally seen as more complex and lengthy than settlement, "[s]ettlement negotiations themselves can be arduous, and the absence of a trial does not necessarily indicate either brevity or efficiency in the proceedings." *Id.* at 904.

Here, it is undisputed that Relator identified a fraud of which the Government was unaware which led to a settlement of $2.1 million; provided the Government with thousands of pages of documents and a 60-page summary of the fraudulent scheme; met with the Government to explain his findings; and provided some further assistance as the investigation went on including compiling a document directory organizing the documents produced by him in the initial disclosure. These facts indicate Relator's contribution was more than the bare minimum.

The Government has not presented evidence to counter Relator's evidence. Nevertheless, Relator's own evidence does not establish that, after the above initial disclosures and help, Relator's contribution to the investigation conducted by the Government was substantial. For example, Relator states in his declaration that he would

have taken on a greater role if the Government had been willing to allow him to do so. Additionally, the case settled without need for trial preparation. Further, Relator opposed the settlement agreement and from this Court's review of the documents related to the settlement negotiations, Relator did not play a productive role in those negotiations.

Thus, this is not a maximum recovery case, but Relator is entitled to an award above the lower end of the range. Upon review of the relevant factors, arguments of the parties, and the evidence submitted by Relator, the Court believes a 19% share is warranted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Relator's motion for share of settlement proceeds is **GRANTED** to the extent that Relator shall receive a 19% share of the settlement proceeds. (Doc. No. 67.)

             _Audrey G. Fleissig_____
             AUDREY G. FLEISSIG
             UNITED STATES DISTRICT JUDGE

Dated this 10th day of April, 2014.